## OVERMAN CUSHION TIRE CO., Inc., v. GOODYEAR TIRE & RUBBER CO., Inc.

District Court, S. D. New York. September 10, 1929.

Robert W. Byerly, of New York City (Robert W. Byerly and Arthur L. Kent, both of New York City, of counsel), for plaintiff.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and Ernest D. Given, both of New York City, of counsel), for defendant.

THACHER, District Judge (after stating the facts as above). What Overman sought to accomplish was the construction of a cushion tire for vehicles which would avoid the outward bending of the load-bearing side walls, which must project well below the wheel flange so as to be freely responsive to absorb shock. Such tires have a tendency to bend or buckle under the shocks of travel usage, and the continuous distortion of the rubber into folds and bends quickly results in the deterioration of the tire. With the bulging of the side walls, the width, and consequently the traction, of the tread is increased, from which unnecessary drain on motive power and increased shock to the vehicle result. If such a tire cannot be made to absorb shock, and at the same time to stand up under the wear of its load, it is of little use and quickly deteriorates. Overman claims to have overcome these defects by designing his tire so that "all its features combine to control these flange-free side walls and to compel them to do their work as far as possible by endwise, that is, vertical compression, with minimized lateral bending or buckling action,—and with the tendency for their laterally displaced material to fill into the tire opening rather than to mush outwardly under the flanges."

The tire described in the specifications and in all the patent drawings embodies the combination of three elements: (1) A hollow longitudinal opening in the body of the tire which has a V-shaped transverse section whose base is at the flange-engaged portion of the tire and whose apex extends toward the tread well below the flange. (2) At the sides of this triangular opening, thick upright side walls with their outer edges, converging steeply toward the tread on substantially straight lines so as to form beneath the apex of the triangular opening a deep nose portion, the bottom of which forms the tread of the tire, which has a wide surface. (3) A longitudinal groove in the surface of the tread which divides the nose portion upwardly from the tread toward the apex of the triangular opening.

The specification refers to compression diagrams included in the drawings to show that under compression up to 1″ the displaced material fills into the longitudinal opening without bulging the sides of the tire outwardly under the flanges to any injurious extent, and without producing any injurious folds or distortions in the material of the tire and without changing its general character or appearance.

Overman disclaimed any novelty in the wheel rim and flanges or the tire securing and clamping devices shown in his drawings. His alleged invention, therefore, was embodied in the physical form of the material of which the tire body was made. It is true that this form is dependent upon means for attaching it to the rim, and in stating the theory of the operation of his tire he points to its flange-engaged portion together with its flange-free wall as forming an elbow with its clamping portion extending over the base of the triangular longitudinal opening into which a clamping device is inserted, and adds that these elbows by being supported at their outer corners by the flange and rim and by being clamped. as indicated, resist any tendency of the side walls to move outward. In modern usage clamps are discarded and cushion and solid tires are solidly vulcanized to standard rims. The comparatively long flange which the patent drawings illustrate has been very substantially shortened in commercial use, and is relied upon, not so much for restraining the side walls of the tire, as for protecting the juncture of tire and rim from physical injury.

Practical experience in extensive commercial use disclosed by the evidence shows that Overman made a valuable contribution to the art. The prior art does not disclose in combination the elements which in co-operation produce the added durability of the Overman cushion tire. The essential elements of his invention are the side walls converging steeply toward the tread on substantially straight lines and the triangular longitudinal opening having its base in the flange-engaged portion of the tire, which is separated from the tread by a deep nose portion. The longitudinal groove in the surface of the tread gives additional lateral flexibility to the tire, and the transverse openings in the tread disclosed in reissue patent No. 13,625 give additional longitudinal flexibility, but these refinements are in no sense essential features of the invention. They are mere mechanical improvements within the range of mechanical skill, fully known and understood to the art

at the time of Overman's invention. No cushion tire as serviceable and durable as the Overman cushion tire was known prior to his invention. This was the conclusion of very large users of automobile trucks. The claims are therefore entitled to a liberality of interpretation sufficiently broad to protect the subject-matter of the invention, the merit of which lies in the form of the tire body, and not in the method of its attachment to the wheel.

In 1917 the defendant was manufacturing and selling a form of cushion tire which differed from the patented tire, in that the longitudinal hollow core was widely oval in form, extending well below the flange line toward the tread of the tire. The sides of the tire body were curved inwardly from the flange line and rounded outwardly at the tread. This construction was unsatisfactory and under usage on trucks soon deteriorated because of creases and folds developed in operation adjacent to the hollow core. In 1923 the defendant produced its pneumatic cushion tire. Here the hollow core is still oval in form but moved upwardly toward the flange and away from the tread, the curves in the side walls of the tire body being very much reduced. In 1927 the defendant produced its Super-Pneumatic cushion tire. Except for a very slight curve immediately below the flange and a very slight curve immediately above the tread, the side walls are straight and steeply inclined, as in the patented device. The hollow core is an elongated oval, in form and shape like a bullet, with its point or apex well above and directly over the center of the tread. This development of the defendant's commercial tire clearly discloses the embodiment of the plaintiff's invention in the Goodyear pneumatic cushion tire of 1923 and the Goodyear Super-Pneumatic cushion tire of 1927. True the defendant's tires have a longitudinal opening with slightly curving sides in place of the strictly triangular form of the patent in suit. Mechanically the two forms are equivalent, and produce the same result, and this difference in form is not sufficient to avoid infringement. It is enough to conclude that claims 6 and 10 of patent No. 1,092,078 are clearly infringed. The validity and infringement of other claims are not adjudicated. In reissue patent No. 13,626 I find no patentable improvement upon the claims of patent No. 1,092,078. As already indicated, transverse openings in the tread may improve the Overman tire, but there was no invention in thus providing additional flexibility.